**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE AND ROBERT MILLER,** | § | |
| **In their individual capacities and as** | § | |
| **next friends of C. M., a Minor Child,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | CIVIL NO. <u>**1:25-CV-01173**</u> |
| | § | |
| | § | |
| **VALOR TEXAS EDUCATION** | § | |
| **FOUNDATION d/b/a VALOR EDUCATION** | § | |
| | § | |
| *Defendant* | § | |

<u>**ORIGINAL COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW CHRISTINE AND ROBERT MILLER**, individually, and as next friends of their minor, disabled child, C. M., who file this Original Complaint against Valor Texas Education Foundation, d/b/a Valor Education ("Valor") for injuries and damages suffered by the parents and the minor child caused by the Defendant's unlawful discrimination against their child by reason of the child's disability in violation of the *Americans with Disabilities Act* and *Section 504 of the Rehabilitation Act of 1973*. Plaintiffs, therefore, seek compensatory damages from this Court. Plaintiffs reserve the right to replead if new legal claims arise upon further development of the facts. In support thereof, Plaintiffs will respectfully show the Court:

**I. <u>INTRODUCTION</u>**

C. M. is a 14-year-old minor child with a clinically diagnosed learning disability in reading comprehension and attention deficits. From August 2021 through June 2024 C. M. attended Valor Education public charter school. As a Texas open-enrollment public charter school, Valor Education must comply with all federal laws and regulations promulgated by the U. S. Congress and passed into law to protect any child or student with a disability from discrimination. Upon the trial of this case, Plaintiffs will prove that C. M., as a student with identified and undisputed disabilities, was refused,

denied and excluded from participation in and denied the benefits of the services, protections, activities, and education programs provided by Defendant Valor Education. Therefore, plaintiffs seek redress and remedies under *Title II of the Americans with Disabilities Act*, 42 U.S.C. § 12101 et seq. (the "ADA") and *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. § 794A ("Section 504").

## II.  PARTIES

1.  Christine and Robert Miller, the parents of C. M., are adult individuals who reside in Austin, Travis County, Texas.

2.  Plaintiff, C. M., is a 14-year-old minor, disabled child who also resides in Austin, Travis County, Texas.

3.  At all times relevant to this suit, C. M. was a student with one or more clinically diagnosed disabilities.  This includes a specific learning disability in reading comprehension, and attention deficit disorder.  C. M. is therefore a "qualified individual with a disability" and protected from discrimination under § 12131 of the ADA.  C. M. is also a "qualified handicapped person" protected from discrimination under Section 504.

4.  Defendant, Valor Texas Education Foundation, d/b/a Valor Education ("Valor"), is a tax-exempt, non-profit corporation as defined under Section 501(c)(3) of the U. S. Internal Revenue Code. Valor is also an open-enrollment public charter school licensed under a contract for charter with the State of Texas to deliver public education services to students.

5.  Valor receives hundreds of thousands of dollars in direct federal funding some,of which is intended to provide free appropriate educational services to special needs children protected from discrimination under the ADA and Section 504.

6.  Thus, at all times relevant to this law suit Valor was a public school, part of the public school system of the State of Texas with a legal duty to comply with all Texas and Federal laws that prohibit unlawful discrimination against any student diagnosed with a disability.

7.  Valor may be served with process by serving its Registered Agent, Marilisa Muckerheide, 220 Foremost Drive, Austin, Texas 78745, the Chairman of the Board of Directors, Dr. Adam Muller, 11720 South MoPac Expressway, Austin, Travis County, Texas 78739, or President and Chief

Executive Officer, David Williams, 11720 South MoPac Expressway, Austin, Travis County, Texas.

### III.  JURISDICTION AND VENUE

8.    Venue is proper in this Federal district court pursuant to 29 U.S.C. § 1391(b) and (c) because this is the Judicial District in which the claims arose and the Judicial District in which Defendant Valor Texas Education Foundation is located.

9.    Plaintiffs bring this action under the applicable provisions of the ADA and Section 504 because of violations of civil rights protected by these federal laws.    This includes violations of the ADA and Section 504 and its implementing regulations.   This Court therefore has original subject matter jurisdiction under 28 U. S. C. § 1331.

### IV.  FACTS

10.    In August 2021 C. M. enrolled at Valor as an 11-year-old fifth grade student.   During the first semester C. M.'s primary teacher reported that C. M. had significant difficulty with reading comprehension, including an inability to understand and comprehend written materials.

11.    C. M. suffered notable deficits, in comparison to his peers, in understanding and comprehending written assignments, in completing reading assignments, and in maintaining attention, focus, and concentration while in the classroom.

12.    According to teacher reports, C. M. exhibited significant difficulties with organization, understanding and following instructions, completing his work, and retaining and remembering written assignments.   As a result, C. M. could not and did not complete assigned tasks without significant classroom support and modifications

13.    Given C. M.'s inability to master the assigned curriculum, in December, 2021, the Student Support Team and Response to Intervention Team at Valor made a referral to the Valor Special Education Department for a full and comprehensive educational assessment and evaluation to assess the nature, extent, and source of C. M.'s educational deficits and in particular, to determine whether or not C. M. suffered from a learning disability.

14.    In January 2022, Dr. Jessica O'Bleness, Ph.D., a Licensed Specialist in School Psychology,

completed a comprehensive individual assessment and evaluation of C. M. As a result of this evaluation, C. M. was formally diagnosed as suffering a specific learning disability in Reading Comprehension.   Specifically, C. M. was documented as being "below average" in reading, passage comprehension, and in the inability to recall the text or substance of what he has read.

15.     Dr. O'Bleness also emphasized the direct correlation between the educational deficits caused by C. M.'s diagnosed learning disability and the negative impact on his adaptive behavior. Frustration and failure in the classroom would invariably lead to personal frustration, a lack of attention, focus, and concentration and inevitably, very disruptive and antagonistic behavior directly linked to and caused by his disability.

16.     Dr. O'Bleness expressly and explicitly observed that C. M.'s "difficulties with attention and concentration are likely a response to the frustrations of schoolwork" and therefore needed to be addressed in any future classroom accommodations provided for C. M.

17.     Dr. O'Bleness' specific recommendations for accommodations to address C. M.'s learning disability in reading included among other things:

  a.  To provide C. M. with more time to complete assignments

  b.  To limit or structure copying activities for C. M.

  c.  To provide C. M. with ample time to complete his work or shorten assignments so that they can be accomplished within the time period

18.     On February 16, 2022, Valor staff convened a meeting of a multi-disciplinary team, consisting of the parents and selected Valor teachers and staff, to review the results of Dr. O'Blenness' comprehensive individualized assessment.

19.     After completing its review, the multi-disciplinary team concluded that C. M., although having an identified learning disability, did not require and therefore was not eligible to receive special education and related services under the Individuals with Disabilities Education Act of 1975 *as amended,* 20 U. S. C. § 1400 *et seq.*

20.     However, the Multi-disciplinary Team did find that C. M. was entitled to the protection from discrimination under Section 504 and the ADA and therefore had a right to specific accommodations

and modifications in each and every class he attended.

21.     The specific accommodations included:

     a.  Shortened classwork or homework

     b.  Extended time to complete classwork or homework as needed

     c.  Seating near instructor and away from distractions

     d.  Access to charts to help with longer mathematical problems

     e.  Access to audio books for core class textbooks and literature

     f.  Daily assignments written in C. M.'s planner and teachers to sign off for each subject

     g.  Activities and class modifications intended to increase C. M.'s rate of comprehension

22.     Throughout the remainder of the 2022 – 2023 school year, and during the first semester of the 2023 – 2024 school year, this Accommodation Plan created to protect C. M. from unlawful discrimination remained in effect.

23.     However, C. M. continued to struggle academically during the remainder of the 2022 -2023 school year and during the first semester of the 2023 – 2024 school year.   Entering 7th grade, the level of C. M.'s educational failures became more pronounced, and the number of disciplinary incidents grew.   The number of teacher complaints about C. M.'s educational performance – his lack of educational progress, lack of focus and attention – escalated.

24.     Upon responding to and investigating these problems, and in direct communications with C. M.'s teachers, Plaintiffs became aware that many if not most of C. M.'s teachers, either intentionally or with deliberate indifference to C. M.'s rights, were not aware of his Accommodation Plan and/or were not implementing or following any of the accommodations set out in his 504 Plan.

25.     On information and belief, at no time during the first semester of 2023 did C. M.'s teachers at Valor comply with any of the 504 accommodations required in the 504 Accommodation Plan.   Valor teaching staff failed to comply with explicit requirements of Federal law, the ADA, and Section 504, to ensure that C. M. received a free public education under the ADA.

26.     On January 31, 2024, Plaintiff Robert Miller, in a communication to Andy Bennett, Senior Executive Director of Management Operations, and copied to Michael Cowan, the Headmaster at

Valor South Austin, gave formal written notice that virtually none of C. M.'s teachers were aware of his 504 Accommodation Plan and none were implementing any of the accommodations as required by the Plan.  **SEE:  EXHIBIT "A"**

27.     Mr. Bennett forwarded Plaintiff's email to Sara Pietrich, Valor's designated Section 504 Coordinator, and to Laura Wilk, Director of Special Programs.

28.     Upon information and belief, no investigation into the alleged violations was instituted, no corrective or disciplinary actions were taken against any Valor employee, no re-evaluation about the effectiveness or efficacy of the 504 Plan was scheduled or conducted, and no significant administrative follow-up was initiated to ensure that all or any of C. M.'s teachers were trained on how to implement the specific accommodations set forth in the Plan.

29.     On February 6, 2024, in direct response to Plaintiff Miller's accusation that Valor teachers were systematically not implementing C. M.'s 504 Plan, Valor staff convened a 504 Committee meeting to once again determine the impact of C. M.'s learning disability on his education and his ability to access and participate in Valor's educational program.

30.     The Section 504 Student Services Plan (attached as Exhibit "A" and incorporated by reference) required all of C. M.'s teachers to adopt and follow specific classroom accommodations. Despite C. M.'s educational failures, the 504 Plan adopted and the accommodation developed were identical to those of the previous plan developed in 2022.

31.     The specific accommodation included:

> h.   Shortened classwork or homework
>
> i.   Extended time to complete classwork or homework as needed
>
> j.   Seating near instruction and away from distractions
>
> k.   Access to charts to help with longer mathematical problems
>
> l.   Access to audio books for core class textbooks and literature
>
> m.   Daily assignments written in C. M.'s planner and teachers to sign off for each subject
>
> n.   Activities and class modifications intended to increase C. M.'s rate of comprehension

32.     In addition, as a student eligible for protections from discrimination under Section 504, Valor

had a legal duty to conduct one or more manifestation determinations as a necessary accommodation to determine whether any misbehavior was a manifestation of C. M.'s disability.

33. The February 2024 Accommodation Plan was operative and in effect for the duration of the 2023 – 2024 school year. Despite the development of the Accommodation Plan there is little evidence that the plan was effective. In fact, the results were just the opposite.

34. From February 2024 through the end of the semester, C. M.'s frustrations and lack of focus and commitment grew more pronounced, and by definition, more disruptive. C. M. was punished and subjected to discipline for manifesting the exact same behavior identified in his individual evaluation as being likely the product of frustration connected to his learning disability. Virtually all of them were for behaviors tied to disruptive behaviors in the classroom and a general lack of focus and concentration. Valor teachers and staff placed C. M. on detention:

> February 8, 9, 12, 23, 26, 27, 28, and 29.
> March 4, 5, 6, 7, 18, 20, 22, and 25.
> April 3, 9, 10, 11, 12, 15, 17, 18, 19, 23, and 24:
> May 3, 6, 7 and 8[th].

35. On at least thirty-five separate occasions during the second semester of 2024, and after the February 8, 2024 Section 504 meeting convened to review C. M.'s accommodations, C. M. was punished and removed from class or placed on detention for misconduct and for disciplinary reasons. This includes punishment for failing to complete assigned schoolwork, failing to stay focused on reading assignments and other tasks, and for antagonistic and disruptive behavior.

36. Valor educational records reveal a pattern of disruptive behavior, lack of preparedness, and issues with his teachers and other authority figures.

37. C. M.'s disciplinary record includes multiple detentions and suspensions, for various reasons the totality of which constituted a change in placement as a matter of law. C. M. frequently exhibited behavioral issues, such as talking out of turn, leaving his seat without permission, and arguing with teachers, which resulted in several detentions and referrals to the office.

38. In summary, C. M. disciplinary record is marked by repeated instances of disruptive behavior, lack of preparedness, and conflicts with authority figures.

39. By any measure, the accommodations set out in C. M.'s 504 Plan were inadequate and

insufficient to ensure C. M.'s educational progress and access to the general curriculum.

40.    At no time during the 2023 – 2024 school year did the charter school ever consider, let alone recommend, a manifestation determination as to whether or not C. M.'s behavioral problems were a manifestation of his disability, or from conditions caused by his disability, nor did his Section 504 team reconvene to review the appropriateness of his Accommodation Plan or to consider a re-evaluation of C. M.

41.    C. M.'s grades for the second semester of the 2023 – 2024 are the best evidence of the abysmal failure of Valor staff to devise an effective Section 504 plan.  C. M. received an "F" in Language Arts, Pre-Algebra, Texas History, Latin, and Art.  His overall grade point average for the semester was a 48, and he received an "F" in every subject except Life Science and PE.

**See: EXHIBIT "B"**

42.    As a direct result of the collective failure of Valor school officials to consistently implement all accommodations under C. M.'s 504 Accommodation Plan, the systematic failure and deliberate indifference of Valor administrators to ensure all teachers and staff were trained and fully in compliance with the accommodations required by C. M. to receive a free appropriate public education, and the egregious failure to comply with all of the legal requirements of the ADA and Section 504 to prevent discrimination, Plaintiffs withdrew C. M. as a student at Valor to prevent further harm.

**CAUSES OF ACTION**

**I.**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**AND SECTION 504 OF THE REHABILITATION ACT OF 1973**

43.    Paragraphs 1 through 42 are incorporated by reference as if set forth in their entirety here. <u>Substantive violations.</u> The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1975 protect a student with a disability from discrimination by any public entity, including all entities that receive federal financial assistance.  Subject entities include public school districts and open-enrollment public charter schools.  A violation of a student's rights under Section 504 is, by definition, also a violation of the ADA.  To establish a claim under Title II of the ADA,

a plaintiff must demonstrate: (1) that he or she is a qualified individual with a disability; (2) who was excluded from participation in, denied benefits of, or subjected to discrimination in services, programs, or activities provided by the public entity; and (3) the exclusion, denial, or discrimination occurred by reason of their disability.

44.     Based upon the Equal Protection Clause of the 14th Amendment, the ADA protects the rights of all individuals with disabilities by banning and prohibiting discrimination by public entities, including public schools.  Specifically, § 12189 of the ADA expressly prohibits educational institutions from discriminating against individuals with disabilities, including by failing to provide necessary modifications, auxiliary aids, or by otherwise denying equal opportunity in courses and examinations.

45.     Section 202 of The Act provides that no "qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."

46.     A "public entity" includes any state or local governmental entity including local school districts and open-enrollment public charter schools.  A "qualified individual with a disability" is an individual who, with or without reasonable modifications to rules, policies or practices, meets the essential eligibility requirements to receive services or to participate in the programs or activities provided by the public entity.

47.     Furthermore, under Section 504, a "qualified handicapped person" is one who (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  Major life activities include schooling and learning. "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance."

48.     Plaintiff C. M. was a "qualified individual with a disability" protected from discrimination under the ADA as well as a "qualified handicapped person" protected from discrimination under Section 504 at all times during his attendance as a student at Defendant Valor Education.

49.     The regulations promulgated to enforce Section 504 grant disabled students a right to an "appropriate education" that is designed to "meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met".   (34 C.F.R. § 104.33)

50.     Despite the parents attempts to educate the Valor staff about C. M.'s disability, and despite the fact that Defendant knew that C. M. suffered from a disabling condition, C. M.'s Accommodation Plan was grossly inadequate, at best only sporadically followed by teachers, and was an abysmal failure. Throughout his tenure as a student at Valor C. M. was repeatedly chastised and disciplined by Defendant's teachers and administrators for conduct attributable wholly or in part to his disability.

51.     Plaintiffs allege that Defendant Valor knowingly, intentionally, or with deliberate indifference discriminated against Plaintiff C. M. in the following respects:

  a. By failing to ensure that C. M. was provided with shortened classwork or homework by all teachers in all classes;

  b. By failing to ensure that C. M. was given extended time to complete classwork or homework as needed in all classes;

  c. By failing to seat C. M. near instruction and away from distractions;

  d. By failing to provide C. M. with access to charts to help with longer mathematical problems;

  e. By failing to provide C. M. access to audio books for core class textbooks and literature;

  f. By failing to create activities and class modifications intended to increase C. M.'s rate of comprehension in all classes by all teachers;

  g. By punishing him for conduct wholly, or in part, attributable to his disability or the effects of his learning disability;

  h. By ostracizing and ridiculing him for behavior that was wholly, or in part, caused by conditions related to his disability;

  i. By refusing to allow him to participate in educational activities and programs because of conduct wholly, or in part, caused by his disability or the direct effects of his

disability;

j.  By failing to provide an appropriate educational program designed to meet C. M.'s needs as adequately as the needs of non-disabled students

k.  By failing to act upon information provided by Plaintiffs about his learning disability to make reasonable accommodations for him in the school setting;

l.  By refusing to allow him to attend class or participate in extracurricular activities because of conduct attributable wholly, or in part, to his disability; and

m.  By excluding C. M. from participation in, and denying him the benefits of, facilities, services, and activities comparable to those provided for nondisabled students.

Each of the foregoing acts and omissions taken singularly or in combination, are a proximate cause of Plaintiffs' injuries and damages as set forth below.

52.  <u>Procedural violations.</u> The regulations to enforce Sec. 504 (34 C.F.R. Part 104 <u>et seq</u>.) establish procedural safeguards to protect the rights of parents and their disabled children under the Act.

53.  Defendant knowingly and intentionally, or with deliberate indifference, violated the due process protections provided to parents under Section 504 by:

a.  Failing to ensure all teachers for all classes implemented C. M.'s Section 504 Plan consistently and without exception;

b.  The failure of certain teachers to implement C. M.'s 504 Plan as required by law;

c.  Failing to perform a re-evaluation of C. M. when it became apparent that the 504 Accommodation Plan developed for him was inadequate to address his academic and behavioral needs; and

d.  Failing to conduct a "manifestation determination" at any time during the 2023 – 2024 school year as required under the ADA and Section 504 to determine whether any of his misbehaviors were a manifestation or link to his disability;

54.  By the actions and unlawful conduct of Defendant in failing to prevent discrimination of C. M. in receiving public education services available to students without a disability as set forth above

Plaintiff C. M. was denied the benefits of the services, programs and activities of Defendant Valor Education.   All of the foregoing intentional acts and omissions taken singularly or in combination are a proximate cause of the Plaintiffs' injuries and create a cause of action for compensatory damages under *Title II of the Americans with Disabilities Act* and *Section 504 of the Rehabilitation Act of 1973*.

## II.
## DAMAGES

55.     The previous paragraphs are specifically incorporated as if set forth in their entirety below. As a direct and proximate cause of harm to Plaintiffs caused by the intentional discrimination of Defendant's employees, C. M. was denied an equal opportunity to participate in, and to enjoy the benefits of, the services and educational programming provided by Valor.   C. M. was routinely denied the right to participate meaningfully in various educational programs and activities, was intentionally excluded from participation in educational activities enjoyed by students without his disabilities, experienced isolation from his peers, suffered a deterioration in his emotional state, frustration, despair, depression, and loss of self-esteem.

56.     The discrimination suffered while at Valor caused C. M. to fail at all aspects of his education. He became disillusioned toward school and defiant and disobedient toward school teachers and school authorities.   Plaintiffs therefore seek compensatory damages for the emotional distress and mental anguish suffered by C. M. in the past and in reasonable probability he will suffer in the future as a direct and proximate result of the intentional discrimination while a student at Valor Education.

57.     Christine and Robert Miller, as parents of C. M., have suffered in the past, and will in all reasonable probability suffer in the future, considerable and significant economic damages and financial losses.   As a direct and proximate result of the Defendant's conduct, Plaintiffs seek the following economic damages:

    a.     Out-of-pocket expenses necessitated by the need to transfer C. M. out of Valor and into another school district;

    b.     Transportation costs

    c.     Supplemental tutoring, academic interventions, counseling, and educational assessments, all aimed at addressing gaps in learning or mitigating the emotional

harm from prior exclusion.

d.     Lost work time

e.     Consultant services and specialized academic supports needed by C. M.

### III.
### COURT COSTS AND ATTORNEY FEES

58.    The previous paragraphs are specifically incorporated as if set forth in their entirety below. As a result of Defendant's discriminatory actions and conduct against the minor child, Plaintiffs have been forced to employ the undersigned attorney. Pursuant to 42 U. S. C. § 12205 Plaintiffs therefore seek all costs and litigation expenses, including reasonable attorney's fees.

### IV.

### JURY DEMAND

59.    Plaintiff respectfully requests trial by jury.

### PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that the Court take jurisdiction of this case, that Defendant be cited to answer and appear; and upon final hearing:

1.     Grant a declaratory judgment against Defendant Valor Education declaring that C. M.'s rights to be free from unlawful discrimination under Section 504 and the ADA were violated.

2.     Grant judgment against the Defendant for compensatory damages;

3.     Grant judgment against Defendant for the pain, suffering and mental anguish suffered by C. M.;

4.     Grant judgment against Defendant for economic damages suffered by Christine and Robert Miller, C. M.'s parents;

5      Grant judgment against Defendant for post-judgment interest from the date of judgment until paid in full as permitted by law;

6.     Grant judgment against Defendant for Plaintiffs litigation expenses, including court costs and reasonable attorney's fees; and

7.      Grant such other and further relief, general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

LAW OFFICE OF K. RANDOLPH EVANS

*Kelly Evans*
_____

Kelly R. Evans,
Attorney at Law
State Bar No. 06723620
P.O. Box 142534
Austin, Texas   78714-2534
512-926-0091 OFFICE
512-926-0092 FAX
Kelly@krevanslaw.com

**ATTORNEY FOR PLAINTIFFS**

 **EXHIBIT A**    Christine Miller <millerca2011@gmail.com>

---

## Caden Miller - Section 504

3 messages

---

**Robert Miller** <robertmiller_tx@yahoo.com>    Wed, Jan 31, 2024 at 6:28 AM
To: "abennett@valoreducation.org" <abennett@valoreducation.org>
Cc: Michael Cowan <mcowan@valoreducation.org>, Christine Miller <millerca2011@gmail.com>

Mr. Bennett,
I am not sure if I'm addressing the correct person for these issues so please re-direct me to the correct people if needed. Our concerns pertain to our son, ███████ who is currently in 7th grade. When ████ was in 5th grade we went through the process that assigned ████ to the Section 504 Student Services Plan. We were told that accommodations would be provided for ████ to assist him in his education. We do not believe that the appropriate accommodations are being provided to ████. This plan was put in place February 2022 and we were not familiar with this 504 Plan and even now we're still learning about the full scope of this plan. However we have discovered that Valor teachers and administrators should be familiar with the 504 Plan and are legally obligated to follow this plan. We were told that we did not have to do anything and that we did not have to tell ████ about this 504 Plan designation so that he would not feel negatively about himself. Ultimately ████ is struggling at school. It does not appear that any significant and/or consistent accommodations are being provided.

We have the 504 Plan from February 2022 (see attachment) but we are not aware of any current accommodations for this year or last school year. Many of C████'s poor academic performance relate to his struggles with maintaining focus and organization. We've been trying to learn more about this 504 Plan and it would seem like Valor is not in compliance.  Here is a list of some examples and areas of concern:

*████ will have shortened classwork or homework - We do not see this happening or at least not on a consistent basis.
*Extended time to complete classwork or homework as needed - We do not see this happening or at least not on a consistent basis.
*Check in with ████ frequently to make sure he knows what is expected - We do not see this happening or at least not on a consistent basis.
*Assessments may be read to ████ as needed at teacher discretion - Maybe not needed? But we do not see this happening.
*STAAR testing accommodations - Not sure about this one but something that we would like to know more about.
*Provided notes - We do not see this happening or at least not on a consistent basis.
*C████'s teachers should be aware of 504 Plan at the beginning of the school year  - Is this happening? If so are the teachers properly fulfilling they're roll?
*Is the 504 Plan properly written for ████? If so then we do not see evidence of that.
*Is there a lack of enforcement of the 504 Plan? To us it appears that way.
*Is there no 504 Plan? This seems possible.
*As parents we should not have to be requesting compliance of this 504 Plan.
*We hope that ████ is not made to feel uncomfortable because of being on this Plan and we hope that ████'s teachers are discreet and courteous when providing accommodations.
*████ or us parents should not have to remind teachers about this Plan and substitute teachers should be made aware as needed.

We are now concerned that ████ may not have struggled so much in 6th grade (last school year) and with the first semester of 7th grade if an appropriate 504 Plan was being followed. Most of the teacher feedback about ████ pertains to him not being prepared and not being focused adequately in class. Those issues are reasons for the 504 Plan so it would seem like the teachers are not aware of this Plan for ████ or that they lack the training. We would like to resolve our concerns as soon as possible and we would like to set up a meeting with the appropriate Valor staff to discuss all these concerns. We would like Valor to have an opportunity to resolve our concerns before we are forced to make any formal complaints to the appropriate agencies.

Thank You for your assistance in this matter
Robert Miller (512)████████

**Valor South Austin**
S1 Report Card
7th grade, 2023-24

 **VALOR** EDUCATION

ID: 001014

| | | Q1 | Q2 | S1FE | S1 | Q3 | Q4 | S2FE | S2 |
|---|---|---|---|---|---|---|---|---|---|
| **Language Arts 7** | Ms. Way | **64 F** | **71 C-** | | **67 F** | **44 F** | **47 F** | **37 F** | **45 F** |
| Participation | | 84 B | 87 B+ | | 86 B | 85 B | 83 B | | 84 B |
| Homework & Reading Checks | | 49 F | 58 F | | 54 F | 31 F | 45 F | | 38 F |
| Assessments | | 73 C | 63 F | | 68 F | 39 F | 44 F | | 41 F |
| Writing Assignments | | 33 F | | | 33 F | 0 F | 0 F | | 0 F |
| **Pre-Algebra II** | Mrs. Schwolert | **77 C+** | **70 C-** | | **74 C** | **56 F** | **53 F** | **52 F** | **55 F** |
| Participation | | 88 B+ | 76 C | | 82 B- | 78 C+ | 77 C+ | | 78 C+ |
| Homework | | 86 B | 85 B | | 85 B | 43 F | 25 F | | 34 F |
| Quizzes | | 66 F | 54 F | | 60 F | 53 F | 58 F | | 56 F |
| Tests | | 71 C- | 67 F | | 69 F | 50 F | 50 F | | 50 F |
| **Life Science 7** | Mr. Martillotti | **70 C-** | **79 C+** | | **75 C** | **66 F** | **76 C** | **73 C** | **71 C-** |
| Participation | | 80 B- | 85 B | | 83 B | 79 C+ | 76 C | | 77 C+ |
| Homework/Classwork/Observations | | 58 F | 68 F | | 63 F | 43 F | 78 C+ | | 60 F |
| Quizzes | | 70 C- | 89 B+ | | 80 B- | 70 C- | 67 F | | 68 F |
| Tests | | 70 C- | 78 C+ | | 74 C | 72 C- | 79 C+ | | 76 C |
| **Texas History 7** | Ms. Heubaum | **72 C-** | **74 C** | | **73 C** | **70 C-** | **64 F** | **44 F** | **65 F** |
| Participation | | 85 B | 87 B+ | | 86 B | 85 B | 78 C+ | | 82 B- |
| Class Work | | 54 F | 78 C+ | | 66 F | 78 C+ | 63 F | | 70 C- |
| Tests/Projects | | 73 C | 56 F | | 65 F | 48 F | 51 F | | 49 F |
| **Physical Education 7** | Ms. Young | **95 A** | **92 A-** | | **94 A** | **91 A-** | **90 A-** | | **90 A-** |
| Participation | | 94 A | 88 B+ | | 91 A- | 88 B+ | 90 A- | | 89 B+ |
| Quizzes | | 102 A+ | 100 A+ | | 101 A+ | 100 A+ | 100 A+ | | 100 A+ |
| PE Uniform | | 90 A- | 96 A | | 93 A | 93 A | 75 C | | 84 B |
| **Latin IB (H)** | Ms. Corley | **45 F** | **64 F** | | **54 F** | **44 F** | **40 F** | **16 F** | **40 F** |
| Participation | | 82 B- | 88 B+ | | 85 B | 80 B- | 71 C- | | 76 C |
| Homework | | 11 F | 41 F | | 26 F | 15 F | 46 F | | 31 F |
| Tests | | 25 F | 58 F | | 42 F | 38 F | 11 F | | 24 F |
| Quizzes | | 61 F | 69 F | | 65 F | 42 F | 32 F | | 37 F |
| **Art 7** | Ms. Purcell | | | | | 57 F | 69 F | | 63 F |
| Participation | | | | | | 62 F | 66 F | | 64 F |
| Craftsmanship | | | | | | 50 F | 72 C- | | 61 F |
| Assessments | | | | | | 64 F | | | 64 F |
| **Music 7** | Ms. Pioquinto | **69 F** | **81 B-** | | **75 C** | | | | |
| Participation | | 78 C+ | 80 B- | | 79 C+ | | | | |
| Quizzes | | 59 F | 82 B- | | 71 C- | | | | |
| **Average** | | 72 | 77 | | **75** | 62 | 64 | 48 | **63** |

GPA is based on the letter grade column above it and weighted by credits.

**Grade Key**

A+  98-100%
A   93-97%
A-  90-92%
B+  87-89%
B   83-86%
B-  80-82%
C+  77-79%
C   73-76%
C-  70-72%
F   0-69%

Please contact your student's teacher(s) if you would like to discuss student performance in greater detail.