**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE AND ROBERT MILLER,** | § | |
| **as next friends of C. M., a Minor Child,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | **CIVIL NO. 1:25-CV-01173-DAE** |
| | § | |
| | § | |
| **VALOR TEXAS EDUCATION** | § | |
| **FOUNDATION d/b/a VALOR EDUCATION** | § | |
| | § | |
| *Defendant* | § | |

## SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

    **COMES NOW CHRISTINE AND ROBERT MILLER**, as next friends of their minor, disabled child, C. M., who file this **Second Amended Complaint** against Valor Texas Education Foundation, d/b/a Valor Education ("Valor") for injuries and damages caused by the Defendant's unlawful discrimination against their child by reason of the child's disability in violation of the *Americans with Disabilities Act* and *Section 504 of the Rehabilitation Act of 1973*. Plaintiffs, therefore, seek compensatory money damages from this Court. Plaintiffs reserve the right to replead if new legal claims arise upon further development of the facts. In support thereof, Plaintiffs will respectfully show the Court:

## I. INTRODUCTION

    C. M. is a 14-year-old minor child with a clinically diagnosed learning disability in reading comprehension and attention deficits. From August 2021 through June 2024, C. M. attended Valor Education public charter school. As a Texas open-enrollment public charter school, Valor Education must comply with all federal laws and regulations promulgated by the U. S. Congress and passed into law to protect any child or student with a disability from discrimination. Upon the trial of this case, Plaintiffs will prove that C. M., as a student with identified and undisputed disabilities, was refused,

denied and excluded from participation in and denied the benefits of the services, protections, activities, and education programs provided by Defendant Valor Education. Therefore, plaintiffs seek redress and remedies under *Title II of the Americans with Disabilities Act*, 42 U.S.C. § 12101 et seq. (the "ADA") and *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. § 794A ("Section 504").

## II.  <u>PARTIES</u>

1.     Christine and Robert Miller, the parents of C. M., are adult individuals who reside in Austin, Travis County, Texas.

2.     Plaintiff, C. M., is a 14-year-old minor, disabled child who also resides in Austin, Travis County, Texas.

3.     At all times relevant to this suit, C. M. was a student with one or more clinically diagnosed disabilities.  This includes a specific learning disability in reading comprehension, and attention deficit disorder.  C. M. is therefore a "qualified individual with a disability" and protected from discrimination under § 12131 of the ADA.  C. M. is also a "qualified handicapped person" protected from discrimination under Section 504.

4.     Defendant, Valor Texas Education Foundation, d/b/a Valor Education ("Valor"), is a tax-exempt, non-profit corporation as defined under Section 501(c)(3) of the U. S. Internal Revenue Code. Valor is also an open-enrollment public charter school licensed under a "Contract for Charter" with the State of Texas to deliver public education services to students.

5.     Valor receives hundreds of thousands of dollars in direct federal funding, some of which is intended to provide free appropriate educational services to special needs children protected from discrimination under Section 504.   As an open-enrollment public charter school, Valor is a "public entity" and therefore subject to the provisions of the ADA.

6.     Thus, at all times relevant to this law suit Valor was a public school, part of the public school system of the State of Texas with a legal duty to comply with all Texas and Federal laws that prohibit unlawful discrimination against any student diagnosed with a disability.

7.     Valor may be served with process by serving its Registered Agent, Marilisa Muckerheide, 220 Foremost Drive, Austin, Texas 78745, the Chairman of the Board of Directors, Dr. Adam Muller,

11720 South MoPac Expressway, Austin, Travis County, Texas 78739, or President and Chief Executive Officer, David Williams, 11720 South MoPac Expressway, Austin, Travis County, Texas.

### III.  JURISDICTION AND VENUE

8.      Venue is proper in this Federal district court pursuant to 29 U.S.C. § 1391(b) and (c) because this is the Judicial District in which the claims arose and the Judicial District in which Defendant Valor Texas Education Foundation is located.

9.      Plaintiffs bring this action under the applicable provisions of the ADA and Section 504 because of violations of civil rights protected by these federal laws.    This includes violations of the ADA and Section 504 and its implementing regulations.   This Court therefore has original subject matter jurisdiction under 28 U. S. C. § 1331.

### IV.  FACTS

10.     In August 2021 C. M. enrolled at Valor as an 11-year-old fifth grade student.   During the first semester C. M.'s primary teacher reported that C. M. had significant difficulty with reading comprehension, including an inability to understand and comprehend written materials.

11.     C. M. suffered notable deficits, in comparison to his peers, in understanding and comprehending written assignments, in completing reading assignments, and in maintaining attention, focus, and concentration while in the classroom.

12.     According to teacher reports, C. M. exhibited significant difficulties with organization, understanding and following instructions, completing his work, and retaining and remembering written assignments.    He "easily lost confidence if he struggled on a task". . . . He struggled with reading comprehension, essay writing, math operations, word problems, and factious decimals….." As a result, C. M. could not and did not complete assigned tasks without significant classroom support and modifications.   He did not meet grade level expectations for math, reading, or writing on state standardized tests for academic achievement.

13.     Given C. M.'s inability to master the assigned curriculum, in December, 2021, the Student Support Team and Response to Intervention Team at Valor made a referral to the Valor Special

Education Department for a full and comprehensive educational assessment and evaluation to assess the nature, extent, and source of C. M.'s educational deficits and in particular, to determine whether or not C. M. suffered from a learning disability.

### CLINICAL TESTING OF C. M. AND
### ADOPTION OF THE 504 ACCOMMODATION PLAN

14.    In January 2022, Dr. Jessica O'Bleness, Ph.D., a Licensed Specialist in School Psychology, completed a comprehensive individual assessment and evaluation of C. M. As a result of this evaluation, C. M. was formally diagnosed as suffering a specific learning disability in Reading Comprehension.   Specifically, C. M. was documented as being "below average" in reading, passage comprehension, and in the inability to recall the text or substance of what he has read.

15.    Dr. O'Bleness also emphasized the direct correlation between the educational deficits caused by C. M.'s diagnosed learning disability and the negative impact on his adaptive behavior. Frustration and failure in the classroom would invariably lead to personal frustration, a lack of attention, focus, and concentration and inevitably, very disruptive and antagonistic behavior directly linked to and caused by his disability.

16.    The clinical testing further revealed that C. M. suffered "Clinically Significant" deficits with attention and learning.   "The attention scale measures the tendency to be easily distracted and the inability to concentrate.   The learning problems scale measures the presence of academic difficulties. C. M. was rated "Clinically Significant" in the area of attention and academic difficulties".   Dr. O'Bleness expressly observed that C. M.'s "difficulties with attention and concentration are likely a response to the frustrations of schoolwork" and therefore needed to be addressed in any future classroom accommodations provided for C. M.

> "The results of the BASC-3 reports suggest some difficulties with attention and learning, and symptoms of anxiety as reported by his mother and teachers. Difficulties with starting and completing assignments were also noted.  His math teacher also mentioned a shift in C. M.'s mood when working on school assignments. C. M.'s emotions and behaviors should be continually monitored. The information provided by C. M.'s teachers and mother does not indicate symptoms or characteristics consistent with significant emotional or behavioral difficulties. The behaviors identified in both settings reflect C. M.'s difficulties with attention and concentration and are likely a response to the frustration he experiences with schoolwork. Further

evaluation of his emotional functioning is not recommended at this time."

*Individual Evaluation Report of Dr. Jessica O'Bleness*, January 10, 2022, P. 12

17.    Dr. O'Bleness' gave very extensive and explicit recommendations for accommodations which included extremely specific recommendations for accommodations to address C. M.'s learning disability in reading comprehension, spelling, and math all subject areas in which C. M. performed below grade level as identified in C. M.'s clinical assessment.   Dr. O'Bleness's full recommendations as listed in C. M.'s individual assessment are attached as **EXHBIT "A"** and incorporated by reference as if set forth in their entirety here.

18.    On February 16, 2022, Valor staff convened a meeting of a multi-disciplinary team, consisting of the parents and selected Valor teachers and staff, to review the results of Dr. O'Bleness' comprehensive individualized assessment and to discuss C. M.'s serious attention deficits and problems with focus and concentration that he had exhibited in class based upon the first-hand reports of his teachers. During this 504 meeting, the parents expressly and specifically discussed C. M.'s problems with focus and attention and the accommodations 504 plan was intended, in part, to reduce, and hopefully, eliminate the impact of these negative adjustment behaviors on C. M.s education.

19.    After completing its review, the multi-disciplinary team concluded that C. M., although having an identified learning disability, did not require and therefore was not eligible to receive special education and related services under the Individuals with Disabilities Education Act of 1975 *as amended,* 20 U. S. C. § 1400 *et seq.* At no time subsequent to this 504 meeting in February 2022 did Defendant teachers or administrators ever discuss with the parents or seek to refer C. M. for special education services.

20.    However, the Multi-disciplinary Team did find that C. M. was entitled to the protection from discrimination under Section 504 and the ADA and therefore had a right to specific accommodations and modifications in each and every class he attended.

21.    The specific accommodations included:

      a.    Shortened classwork or homework

      b.    Extended time to complete classwork or homework as needed

      c.    Seating near instructor and away from distractions

      d.   Access to charts to help with longer mathematical problems

      e.   Access to audio books for core class textbooks and literature

      f.   Daily assignments written in C. M.'s planner and teachers to sign off for each subject

      g.   Activities and class modifications intended to increase C. M.'s rate of comprehension

22.    Throughout the remainder of the 2022 – 2023 school year, and during the first semester of the 2023 – 2024 school year, this Accommodation Plan was created to protect C. M. from unlawful discrimination remained in effect.

23.    However, C. M. continued to struggle academically during the remainder of the 2022 -2023 school year and during the first semester of the 2023 – 2024 school year.   Entering 7th grade, the level of C. M.'s educational failures became more pronounced, and the number of disciplinary incidents grew.   The number of teacher complaints about C. M.'s educational performance – his lack of educational progress, lack of focus and attention – escalated.

24.    Upon responding to and investigating these problems, and in direct communications with C. M.'s teachers, Plaintiffs became aware that many if not most of C. M.'s teachers, either intentionally, with deliberate indifference, or as a result of gross professional misjudgment by Valor staff to C. M.'s rights, were not aware of his Accommodation Plan and/or were not implementing or following any of the accommodations set out in his 504 Plan.

25.    On information and belief, at no time during the first semester of 2023 did C. M.'s teachers at Valor comply with any of the 504 accommodations required in the 504 Accommodation Plan.   Valor teaching staff failed or intentionally refused to comply with explicit requirements of Federal law, the ADA, and Section 504, to ensure that C. M. received a free public education under the ADA.

26.    By letter May 23, 204, Plaintiffs' legal counsel submitted a Public Information Request ("PIR") to Stephen Gordan, Superintendent of Schools, at Valor. [Attached as **EXHIBIT "B"**]. The purpose was to verify in good faith and with due diligence Defendant's commitment to implement and monitor enforcement of C. M.'s 504 Accommodation Plan.   The PIR included 20 separate requests for documents and educational records relevant to C. M.'s education.

27.    For example, Defendant was asked for "all documents and/or communications evidencing any directions, instructions, training, and guidance given and/or provided to every teacher to implement any element of the Section 504 Accommodation Plan developed for [C. M.]". Exhibiting callous indifference to C. M.'s accommodations, Defendant provided not one scintilla of documented evidence of any teacher training or support.

28.    Across all the documents reviewed, there is a consistent and clear description of the school's procedure for informing teachers about C. M.'s 504 plan, but no evidence of any structured or formal training sessions provided to teachers regarding the implementation of that plan.

29.    The key documents containing relevant information specify that the school district's established procedure is to email the Section 504 Student Services Plan to all necessary school personnel and to "meet with them as needed for support." This language appears verbatim in the 504 plans for multiple years, including both the 2022 and 2024 versions, and in the official Certificate of Plan Distribution signed by the 504 coordinator or designated staff member to verify delivery of the plan.

30.    Notably, while the protocol allows for follow-up meetings for support "as needed," there is no evidence in any document that these meetings with teachers actually took place or what any such support might have entailed.

31.    Defendant provided no documentation of structured group training, in-person or virtual orientation sessions, mandatory teacher meetings, staff development workshops, or detailed records indicating specific training content, dates, attendees, or agendas for teachers relating to C. M.'s 504 plan. No logs, checklists, or follow-up notes confirm that any training beyond the plan distribution and the offer of support was ever provided.

32.    According to Valor's own documents all available evidence demonstrates that the only documented "training" or orientation for teachers regarding C. M.'s 504 plan consists of (1) providing the plan by email, (2) requesting review and implementation, and (3) offering to meet for support if teachers request it. There are no records of actual in-person or group training, staff-wide sessions, or systematic 504-related professional development for C. M.'s teachers. Any additional teacher training

or coaching, if it occurred, is not recorded in the provided documents.

33.     On January 31, 2024, Plaintiff Robert Miller, in a communication to Andy Bennett, Senior Executive Director of Management Operations, and copied to Michael Cowan, the Headmaster at Valor South Austin, gave formal written notice that virtually none of C. M.'s teachers were aware of his 504 Accommodation Plan and none were implementing any of the accommodations as required by the Plan.  **SEE:   EXHIBIT "C"**

34.     Mr. Bennett forwarded Plaintiff's email to Sara Pietrich, Valor's designated Section 504 Coordinator, and to Laura Wilk, Director of Special Programs.

35.     Upon information and belief, Defendant's intentional or deliberate indifference is also reflected in the fact that no investigation into the alleged violations of C. M.'s 504 Plan was instituted, no corrective or disciplinary actions were taken against any Valor employee or administrator in exhibiting gross professional misjudgment in failing to insure the accommodations were implemented, no re-evaluation about the effectiveness or efficacy of the 504 Plan was scheduled or conducted, and no significant administrative follow-up was initiated to ensure that all or any of C. M.'s teachers were trained on how to implement the specific accommodations set forth in the Plan.

36.     On February 6, 2024, in direct response to Plaintiff Miller's accusation that Valor teachers were systematically not implementing C. M.'s 504 Plan, Valor staff convened a 504 Committee meeting to once again determine the impact of C. M.'s learning disability on his education and his ability to access and participate in Valor's educational program.

37.     The Section 504 Student Services Plan   required all of C. M.'s teachers to adopt and follow specific classroom accommodations.   Despite C. M.'s educational failures, the 504 Plan adopted and the accommodation developed were identical to those of the previous plan developed in 2022.

38.     The specific accommodation included:

        h.   Shortened classwork or homework

        i.   Extended time to complete classwork or homework as needed

        j.   Seating near instruction and away from distractions

        k.   Access to charts to help with longer mathematical problems

l.   Access to audio books for core class textbooks and literature

m.   Daily assignments written in C. M.'s planner and teachers to sign off for each subject

n.   Activities and class modifications intended to increase C. M.'s rate of comprehension

39.     In addition, as a student eligible for protections from discrimination under Section 504, Valor had a legal duty to conduct one or more manifestation determinations as a necessary accommodation to determine whether any misbehavior was a manifestation of C. M.'s disability.   This was specified and included in C. M.'s 504 Accommodation Plan and intentionally ignored.

A40.    The February 2024 Accommodation Plan was operative and in effect for the duration of the 2023 – 2024 school year.   Despite the development of the Accommodation Plan, there is little evidence that the plan was effective.   In fact, the results were just the opposite.

41.     From February 2024 through the end of the semester, C. M.'s frustrations and lack of focus and commitment grew more pronounced, and by definition, more disruptive.   C. M. was punished and subjected to discipline for manifesting the exact same behavior identified in his individual evaluation as being likely the product of frustration connected to his learning disability.   Virtually all of them were for behaviors tied to disruptive behaviors in the classroom and a general lack of focus and concentration. Valor teachers and staff placed C. M. on detention:

> February 8, 9, 12, 23, 26, 27, 28, and 29.
> March 4, 5, 6, 7, 18, 20, 22, and 25.
> April 3, 9, 10, 11, 12, 15, 17, 18, 19, 23, and 24:
> May 3, 6, 7 and 8th.

43.     On at least thirty-five separate occasions during the second semester of 2024, and after the February 8, 2024, Section 504 meeting convened to review C. M.'s accommodations, C. M. was punished and removed from class or placed on detention for misconduct and for disciplinary reasons. This includes punishment for failing to complete assigned schoolwork, failing to stay focused on reading assignments and other tasks, and for antagonistic and disruptive behavior.

44.     Defendant's discipline history imposed on C. M. was no accident.   It was intentional and it was deliberate.   Defendant knew that C. M. was a student with a disability.   Defendant knew that C. M. had a right to be free of discrimination as a result of the protections of a 504 Accommodation Plan.

45.     Defendant knew that C. M. had clinically diagnosed problems with attention deficits and

frustration caused by, or related to, his disability and the associated problems caused by it.    Defendant intentionally punished C. M. repeatedly without ever once performing a single manifestation determination at any time as a required accommodation under his 504 plan.

46.    Valor educational records reveal a pattern of disruptive behavior, lack of preparedness, and issues with his teachers and other authority figures.

47.    C. M.'s disciplinary record includes multiple detentions and suspensions for various reasons the totality of which constituted a change in placement as a matter of law. C. M. frequently exhibited behavioral issues, such as talking out of turn, leaving his seat without permission, and arguing with teachers, which resulted in several detentions and referrals to the office.

48.    In summary, C. M. disciplinary record is marked by repeated instances of disruptive behavior, lack of preparedness, and conflicts with authority figures.

49.    The documentation provided to Plaintiff's counsel in response to the PIR reflects callous and deliberate indifference, bad faith, and gross misjudgment.  Defendant's own public records do not contain any information regarding any manifestation determination being conducted at any time by school officials during the two years that C. M. had an Accommodation Plan in place. At no time during the 2023 – 2024 school year did the charter school ever consider, let alone recommend, a manifestation determination as to whether or not C. M.'s behavioral problems were a manifestation of his disability, or from conditions caused by his disability, nor did his Section 504 team reconvene to review the appropriateness of his Accommodation Plan or to consider a re-evaluation of C. M.

50.    By any measure, the accommodations set out in C. M.'s 504 Plan were inadequate and insufficient to ensure C. M.'s educational progress and access to the general curriculum.

51.    C. M.'s grades for the second semester of the 2023 – 2024 are the best evidence of the abysmal failure of Valor staff to devise an effective Section 504 plan.  C. M. received an "F" in Language Arts, Pre-Algebra, Texas History, Latin, and Art.   His overall grade point average for the semester was a 48, and he received an "F" in every subject except Life Science and PE.

**See: EXHIBIT "D"**

52.    During the summer of 2024, Defendant informed C. M.'s parents that C. M. would be required

to repeat the 7th grade due to his academic failures.  Plaintiffs were distraught over Defendant's egregious failure to implement the accommodations to which C. M. was entitled.

53.    Heart-broken by the wasted year in C. M.'s education, the potential impact on his life and future, and the emotional harm suffered by C. M., Plaintiffs' withdrew C. M. from Valor and transferred him into the Austin Independent School District.

54.    This was a direct result of the collective failure of Valor school officials to consistently implement all accommodations under C. M.'s 504 Accommodation Plan, the systematic failure and deliberate indifference of Valor administrators to ensure all teachers and staff were trained and fully in compliance with the accommodations required by C. M. to receive a free appropriate public education, and the egregious failure to comply with all of the legal requirements of the ADA and Section 504 to prevent discrimination.

## CAUSES OF ACTION

### I.
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973

55.    Paragraphs 1 through 55 are incorporated by reference as if set forth in their entirety here. <u>Substantive violations.</u> The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1975 protect a student with a disability from discrimination by any public entity, including all entities that receive federal financial assistance.   Subject entities include public school districts and open-enrollment public charter schools.   A violation of a student's rights under Section 504 is, by definition, also a violation of the ADA.   To establish a claim under Title II of the ADA, a plaintiff must demonstrate: (1) that he or she is a qualified individual with a disability; (2) who was excluded from participation in, denied benefits of, or subjected to discrimination in services, programs, or activities provided by the public entity; and (3) the exclusion, denial, or discrimination occurred by reason of their disability.

56.    Based upon the Equal Protection Clause of the 14th Amendment, the ADA protects the rights of all individuals with disabilities by banning and prohibiting discrimination by public entities, including public schools.   Specifically, § 12189 of the ADA expressly prohibits educational

institutions from discriminating against individuals with disabilities, including by failing to provide necessary modifications, auxiliary aids, or by otherwise denying equal opportunity in courses and examinations.

57.    Section 202 of The Act provides that no "qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."

58.    A "public entity" includes any state or local governmental entity including local school districts and open-enrollment public charter schools.   A "qualified individual with a disability" is an individual who, with or without reasonable modifications to rules, policies or practices, meets the essential eligibility requirements to receive services or to participate in the programs or activities provided by the public entity.

59.    Furthermore, under Section 504, a "qualified handicapped person" is one who (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.   Major life activities include schooling and learning. "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance."

60.    Plaintiff C. M. was a "qualified individual with a disability" protected from discrimination under the ADA as well as a "qualified handicapped person" protected from discrimination under Section 504 at all times during his attendance as a student at Defendant Valor Education, a "public entity" as defined under the ADA.

61.    The regulations promulgated to enforce Section 504 grant disabled students a right to an "appropriate education" that is designed to "meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met".   (34 C.F.R. § 104.33)

62.    Despite the parents attempts to educate the Valor staff about C. M.'s disability, and despite the fact that Defendant knew that C. M. suffered from a disabling condition, C. M.'s Accommodation Plan was grossly inadequate, at best only sporadically followed by teachers, and was an abysmal

failure. Throughout his tenure as a student at Valor C. M. was repeatedly chastised and disciplined by Defendant's teachers and administrators for conduct attributable wholly or in part to his disability.

63.    Plaintiffs allege that Defendant Valor in bad faith and exhibiting gross professional misjudgment, knowingly, intentionally, or with deliberate indifference discriminated against Plaintiff C. M. in the following respects:

    a.    By failing to ensure that C. M. was provided with shortened classwork or homework by all teachers in all classes;

    b.    By failing to ensure that C. M. was given extended time to complete classwork or homework as needed in all classes;

    c.    By failing to seat C. M. near instruction and away from distractions;

    d.    By failing to provide C. M. with access to charts to help with longer mathematical problems;

    e.    By failing to provide C. M. access to audio books for core class textbooks and literature;

    f.    By failing to create activities and class modifications intended to increase C. M.'s rate of comprehension in all classes by all teachers;

    g.    By punishing C. M. for conduct wholly, or in part, attributable to his disability or the effects of his learning disability;

    h.    By ostracizing and ridiculing C. M. for behavior that was wholly, or in part, caused by conditions related to his disability;

    i.    By refusing to allow C. M. to participate in educational activities and programs because of conduct wholly, or in part, caused by his disability or the direct effects of his disability;

    j.    By failing to provide an appropriate educational program designed to meet C. M.'s needs as adequately as the needs of non-disabled students

    k.    By failing to act upon information provided by Plaintiffs about his learning disability to make reasonable accommodations for him in the school setting;

l.       By refusing to allow him to attend class or participate in extracurricular activities because of conduct attributable wholly, or in part, to his disability; and

m.       By excluding C. M. from participation in, and denying him the benefits of, facilities, services, and activities comparable to those provided for nondisabled students.

Each of the foregoing acts and omissions taken singularly or in combination, are a direct cause of C. M.'s injuries and damages as set forth below.

64.      <u>Procedural violations.</u> The regulations to enforce Sec. 504 (34 C.F.R. Part 104 <u>et seq.</u>) establish procedural safeguards to protect the rights of parents and their disabled children under the Act.

65.      Defendant knowingly and intentionally, or with deliberate indifference, violated the due process protections provided to parents under Section 504 by:

a.       Failing to ensure all teachers for all classes implemented C. M.'s Section 504 Plan consistently and without exception;

b.       The failure of certain teachers to implement C. M.'s 504 Plan as required by law;

c.       Failing to perform a re-evaluation of C. M. when it became apparent that the 504 Accommodation Plan developed for him was inadequate to address his academic and behavioral needs; and

d.       Failing to conduct a "manifestation determination" at any time during the 2023 – 2024 school year as required under the ADA and Section 504 to determine whether any of his misbehaviors were a manifestation or link to his disability;

66.      By the actions and unlawful conduct of Defendant in failing to prevent discrimination of C. M. in receiving public education services available to students without a disability as set forth above Plaintiff C. M. was denied the benefits of the services, programs and activities of Defendant Valor Education.  All of the foregoing intentional acts and omissions taken singularly or in combination are a proximate cause of the Plaintiffs' injuries and create a cause of action for compensatory damages under *Title II of the Americans with Disabilities Act* and *Section 504 of the Rehabilitation Act of 1973*.

## II.
## DAMAGES

67.      The previous paragraphs are specifically incorporated as if set forth in their entirety below. As a direct and proximate cause of harm to Plaintiffs caused by the intentional discrimination of Defendant's employees, C. M. was denied an equal opportunity to participate in, and to enjoy the benefits of, the services and educational programming provided by Valor.  C. M. was routinely denied the right to participate meaningfully in various educational programs and activities, was intentionally excluded from participation in educational activities enjoyed by students without his disabilities, experienced isolation from his peers, suffered a deterioration in his emotional state, frustration, despair, depression, and loss of self-esteem.

68.      The egregious and indefensible discrimination suffered while at Valor caused C. M. to fail at all aspects of his education.  He became disillusioned toward school and defiant and disobedient toward school teachers and school authorities.   Plaintiffs therefore seek compensatory damages for his educational losses and for the emotional distress and mental anguish suffered by C. M. in the past and in reasonable probability he will suffer in the future as a direct and proximate result of the intentional discrimination while a student at Valor Education.

## III.
## COURT COSTS AND ATTORNEY FEES

69.      The previous paragraphs are specifically incorporated as if set forth in their entirety below. As a result of Defendant's discriminatory actions and conduct against the minor child, Plaintiffs have been forced to employ the undersigned attorney. Pursuant to 42 U. S. C. § 12205 Plaintiffs therefore seek all costs and litigation expenses, including reasonable attorney's fees.

## IV.
## JURY DEMAND

70.      Plaintiff respectfully requests trial by jury.

## **PRAYER**

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that the Court take jurisdiction of this case, that Defendant be cited to answer and appear; and upon final hearing:

1.    Grant a declaratory judgment against Defendant Valor Education declaring that C. M.'s rights to be free from unlawful discrimination under Section 504 and the ADA were violated;

2.    Grant judgment against the Defendant for compensatory damages;

3.    Grant judgment against Defendant for the pain, suffering and mental anguish suffered by C. M.;

4     Grant judgment against Defendant for post-judgment interest from the date of judgment until paid in full as permitted by law;

5.    Grant judgment against Defendant for Plaintiffs litigation expenses, including court costs and reasonable attorney's fees; and

6.    Grant such other and further relief, general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

LAW OFFICE OF K. RANDOLPH EVANS

*Kelly Evans*

Kelly R. Evans,
Attorney at Law
State Bar No. 06723620
P.O. Box 142534
Austin, Texas   78714-2534
512-926-0091 OFFICE
512-926-0092 FAX
Kelly@krevanslaw.com

**ATTORNEY FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This will certify that on this the 1st day of October 2025, a true and correct copy of the

foregoing has been sent:

_____    certified mail, return receipt requested

_____    Telefax transmission

_____    Express courier

_____    hand delivery

XX          electronically served and submitted for e-filing with the Clerk of the U. S. District

Court for the Western District of Texas using the electronic filing system to:

Christopher H. Schultz
9011 Mountain Ridge Drive, Suite 210
Austin, Texas 78759
512-840-0022 OFFICE
512-538-5384 FAX
Email:  cschulz@slh-law.com

ATTORNEY FOR DEFENDANT

*Kelly Evans*

_____

KELLY EVANS

# EXHIBIT A



7410 Blanco, Suite 400
San Antonio, Texas 78216
(210) 838-5351

**CONFIDENTIAL**
**FULL AND INDIVIDUAL EVALUATION AND**
**ELIGIBILITY REPORT**

**NAME**: ███████          **SCHOOL**: Valor South Austin
**DOB**: █          **GRADE**: 5th
**DATES OF TESTING**: 01/04 & 01/05/2022          **DATE OF REPORT**: 01/10/2022
**EXAMINERS**: Jessica O'Bleness, PhD
          Licensed Specialist in School Psychology

## REASON FOR REFERRAL

███████ is an eleven-year-old male in fifth grade at Valor Public School South Austin. ███ was referred for an evaluation by the Student Support Team and Response to Intervention Team at Valor South Austin due to concerns regarding the areas of writing (dysgraphia) and math. He has received supports through the RtI process and continues to struggle in these areas. Formal/informal evaluation, a review of records, observations, and parent/teacher surveys will be used to determine if ███ exhibits an educational need for special education.

## BACKGROUND INFORMATION

███ began his schooling at Strickland Christian School. Next, ███ attended Cowan Elementary at Austin Independent School District for 1st through 3rd grade while on the waitlist at Valor Public Schools. ███'s mother reported ███ learns best one-on-one. He attended Mathnasium in 4th grade before the COVID-19 pandemic. His mother reported ███'s skills regressed with the reduced curriculum at Cowan Elementary.

███'s previous teacher, Ann Hooper, provided many accommodations and supports in the class including: shortened assignments, oral read aloud, modified assignments, and tutoring. ███ exhibited the most growth with tutoring due to the removal of distractions and fear of people watching him. He easily lost his confidence if he struggled on a task. His teacher would check on ███ during lunch and provide a "pep talk." Ann Hooper reported ███ works best with practice and encouragement. She reported his reading and decoding skills and writing skills as a strength. However, he struggled with reading comprehension, essay writing, math operations, word problems, and fractions/decimals.

███'s grades in 4th grade were as follows:

| Language Arts | B |
|---|---|
| Literature | B |

█████ – CONFIDENTIAL

evidence that assists in explaining the nature of the individual's observed learning difficulties. Overall, these findings indicate support for a below average aptitude-achievement consistency.

5.      The student's lack of adequate achievement is not due to lack of appropriate instruction delivered by qualified personnel in the general education setting; is based on data-based documentation of repeated assessments, such as RtI progress monitoring results, in-class tests on grade-level curriculum or other regularly administered assessments.

6.      The student's lack of adequate achievement is not primarily the result of a visual, hearing, or motor disability; an intellectual disability; an emotional disturbance; cultural factors, environmental or economic disadvantage; or limited English proficiency.

This determination was made using a pattern of strengths and weaknesses model that includes research- based methods, based on the statistical properties of the tests administered.

**When considering the results of this evaluation and all contributing sources of data, it is concluded that █████ meets the criteria for the educational classification of Specific Learning Disability in the area of Reading Comprehension.**  This determination was made using a balanced approach that included a variety of sources of information.  Placement in special education is an ARD committee decision based on least restrictive environment.

## RECOMMENDATIONS

- Provide █████ with more time to complete assignments.
- Limit or structure copying activities for █████.
- Provide activities to increase █████'s rate and fluency (e.g., flash cards, speed drills, educational software).
- Because █████ has difficulty performing tasks rapidly under pressure, provide him with ample time to complete his work or shorten assignments so that they can be accomplished within the period.
    - Favor quality over quantity.

**Reading Comprehension**

- Provide focus to readings, especially those that are long in length.
    - Highlight key points for █████ to look out for.
- Provide █████ with a variety of opportunities to review what he has read.
    - Try story maps, or story re-telling.
- Encourage him to make connections between the reading passage and his world.
    - This might include making the following connections:
        - **Text to Self**: How does what you are reading relate to your own experiences?
        - **Text to Text**: How does what you are reading relate to something else you have read (i.e., same author, same subject)?

███████ – CONFIDENTIAL

- **Text to World**: How does what you are reading relate to real-world issues?
- Encourage ███ to re-read passages.
  - He will be able to read with increased speed and fluency, which will allow him to extract more knowledge from what he read.

- Allow ████ to demonstrate his understanding of readings in a variety of ways.
  - He may like to draw pictures, make charts, write a poem, write a play, etc.
- Use cooperative learning activities.
  - Assign ████ a part of the reading that he is responsible for teaching to another student.
    - This provides the opportunity for him to paraphrase what he has read, which may help commit the information to memory.
- Encourage ████ to visualize what was read and encourage the use of graphic organizers.
- Encourage ████ to ask himself questions.
  - Ask questions before, during, and after reading.
  - Ask questions to clarify meaning, make predictions about text yet to be read, determine an author's purpose and style, focus on specific parts of the text, and/or to find a specific answer within the text.
  - Determine whether the answer to the question is explicitly stated in the text or must be inferred from what is being read.
  - Understand that questioning is important to many other areas of life.
- Explicitly teach reading comprehension strategies.
  - Teach reading comprehension strategies individually or in combination and by using a gradual release of responsibility.
  - Among the strategies are questioning, visualizing, predicting/activating prior knowledge and monitoring, clarifying and fix-up, drawing inferences and summarizing/retelling.

  *Examples of activities*:
  - Ask students to predict what will happen at the end of a story. Have them explain how they decided on their prediction, which encourages them to make inferences about what they are reading.
  - Put questioning words (e.g., where, why) on index cards and distribute to students. Have students form small groups and ask questions using these words.
  - Ask students to visualize what is described in the text and to describe what they see.
  - Write different reading comprehension strategies on cards and have students work in pairs to apply the strategies to text they don't understand.
  - Identify key words in a passage and explain what students can learn about the passage from those words.

25

V5

██████ – CONFIDENTIAL

- Explicitly teach strategies to monitor comprehension.
  - Identify where the difficulty occurs.
  - Identify what the difficulty is.
  - Restate the difficult sentence or passage in their own words.
  - Look back through the text.
  - Look forward in the text for information that might help them to resolve the difficulty.

## Spelling and Writing

- Because completing paper/pencil tasks are tedious for ████, provide him with ample time to complete his work or shorten assignments so that they can be accomplished in a timely manner. Favor quality over quantity. For example, consider asking ████ to complete only the odd problems on a worksheet once he has demonstrated mastery of the material. Provide ████ with 50% more time on class reading and writing assignments and tests, including standardized tests and exams. This will give him an opportunity to reread passages before answering questions.

- ████ may struggle to keep up with verbally presented information long enough to effectively process it and record it in his notes. Copying activities should be limited or structured. For example, provide notes with blanks to fill in while following along, as opposed to asking him to copy notes from the board. As he gets older, ████ will benefit from being provided with copies of lecture notes or presentations, being allowed to record class lectures, having a peer note taker, or take a photo of class notes or presentations.

- Provide different ways for ████ to respond, like saying the answers orally, creating a visual presentation (poster or power point), having larger spaces for writing, or circling the answer instead of filling in the blank or writing open-ending responses. For assignments that involve writing but that are not meant to measure written expression skills, give ████ sentence stems to complete the assignment.

- To assist with letter formation and handwriting, ████ should use wide lined paper (preferably with a middle line) to provide visual boundaries when writing. Also, provide access to different types of pencil grips when writing and/or larger primary pencils. ████ may benefit from using lined paper turned horizontally or large graph paper to help with aligning math calculations. Use visual and graphic organizers to help ████ in organizing paragraphs.

- Utilize pre-writing visual and graphic organizers to brainstorm ideas and to help increase ████'s written output.

- Introduce ████ to keyboarding skills. Provide access to online keyboarding building skills (e.g., *Keyboarding Without Tears* www.lwtears.com/kwt). Use of a laptop or word processor is recommended for lengthy writing assignments.

- Consider allowing ████ to utilize a computer for writing assignments (longer than half a page) as it is more efficient when revising and editing are necessary.

- Make a tape of ████'s own voice spelling the words.
  - Have ████ listen to the tape and write the words as they are heard.

V5

███ – CONFIDENTIAL

ꙇ    Once the draft of a written assignment has been completed, have ███ put it aside. Have him proof it later by reading it aloud, making corrections in grammar or sentence structure and underlining any words whose spelling is questionable.

> ▪ Spelling assistance should be sought before final copy is considered complete.

## LIMITATIONS AND DISCLOSURE

All educational and/or clinical opinions in this report were based on the information available at the time of the evaluation. Therefore, the opinions presented in this report must be interpreted within the limited scope of the existing information at the time of the evaluation. All educational and/or clinical opinions were based on a reasonable degree of scientific accuracy based on the psychometric instruments administered, school and private records, and data provided by relevant informants. Subsequent evidence that may arise after the current evaluation may be used to modify or supplement the opinions presented in this report.

_Jessica O'Bleness_
Jessica O'Bleness, Ph.D.
Licensed Specialist in School Psychology
TX License #70958

V5

27



Law Offices of

# KELLY RANDOLPH EVANS

P.O. Box 142534
Austin, Texas 78714-2534
OFFICE (512)926-0091   FAX  (512)926-0092  EMAIL: KelEvans@aol.com

May 23,  2024

Mr. Stephen Gordon,                               **VIA PUBLIC INFORMATION**
Superintendent of Schools                         **info.southaustin@valoreducation.org**
Valor Education
202 Foremost Drive
Austin, Texas 78765

> **RE:    In Re** ██████ ███████
> **Request for student records and public information**

Dear Superintendent Gordon:

     As custodian of records for Valor Education, an open-enrollment public charter school, please accept this letter as formal notice that my law firm has been retained by Robert and Christine Miller, the parents of ███████, a student who attends Valor Education.  My clients have directed me to obtain the disclosure of all student education, academic, disciplinary, and business records requested in all matters related to ██████'s education now in the possession of any employee, administrator, or board member of Valor Education.  I have enclosed an authorization form signed by ██████'s mother granting her consent and directive to Valor Education to release to this law office all educational records and other information requested.  I respectfully request production of all student records and other relevant documents produced or created at any time beginning September 1, 2018, through the date of this letter.

     Pursuant to §§ 26.004 and 26.0085, Texas Education Code; the Texas Public Information Act (Chapter 552, Texas Govt. Code); the Family Educational Rights and Privacy Act (FERPA), the Individuals with Disabilities Education Act of 2004, *as amended*, (IDEA), and Section 504 of the Rehabilitation Act of 1973 (34 CFR § 104.36), I ask that you produce for inspection and copying all educational records, student records, documents, statements, e-mails, correspondence, evaluations, memoranda, and other relevant reports, in the possession, custody or control of any teacher, counselor, diagnostician, principal, and administrator of Valor Education open-enrollment charter school district that are responsive to the enumerated requests listed in the attached **Addendum** incorporated by reference in this letter.

     I specifically request production of all electronic data contained on any computer generated or electronic file.  I ask that a search be conducted for all relevant documents on the Valor Education server and network and including a search of all computers, hard drives, laptops, tablets, emails, voice mail systems, floppy disks and diskettes, network servers, back-up electronic storage systems, removable data cartridges, e-mail transmissions and any other device or media capable of containing electronic or magnetic data and produce be conducted.  In this regard, electronic or magnetic data

should be produced in its native computer readable format with an identification of its associated software application and computer system on CD-ROM's or readable by PC computers. Finally, the data produced should contain an exact and complete image copy of the source hard drives, or other electronic or magnetic media or storage device containing the original data and include not only active files, but all deleted, erased, or discarded copies, and prior versions or drafts of the data.

████ is a child with an identified disability under both State and Federal law. As such, all information and documents now being requested are readily available to a parent of a student with an identified and diagnosed disability. Any willful or deliberate destruction or alteration of e-mail communications or other official government document that may be responsive to this request may constitute a violation of the Texas Public Information Act, FERPA, the Individuals with Disabilities Education Act of 2004, *as amended*, and Section 504 of the Rehabilitation Act of 1973, and may further be punishable as a crime under Chapter 37 of the Texas Penal Code.

If you have any questions or need additional information to clarify a request, or to comply with any of the enumerated requests, please feel free to contact my office. Should the administration deem any information requested to constitute "public information", and therefore fall under the provisions of Chapter 552, Tex. Govt. Code, and if production of said information will result in the imposition of a charge that exceeds $40, I ask that you please provide my office with a written itemized statement that details all estimated charges that will be imposed prior to incurring such cost or expense. Thank you for your cooperation.

Sincerely,

*KR Evans*

K. RANDOLPH EVANS,
Attorney at Law


cc    Robert and Christine Miller

# <u>ADDENDUM</u>

1.  All evaluations and assessment data concerning ████ ████, including all Full and Individual Evaluations (FIE), comprehensive assessments, functional behavior assessments, parent information, family histories, teacher observations and reports, testing protocols, as well as all documentation obtained and considered in conducting any evaluation, assessment, and/or test;

2.  All documentation, notes, summaries, and minutes of every Section 504 meeting, including all 504 Accommodation Plains, Individualized Education Plans (if any), documented modifications, established behavior intervention plans (if any), notices of 504 meetings sent or given to the parents,

3.  All prior written notices delivered to the parents documenting the charter school's denial or refusal to provide any service, program, related service, or activity requested by the parent;

4.  All relevant evaluation data reviewed by any teacher or member of the student's Section 504 Campus Review Committee that formed the basis of the development of any Section 504 Accommodation Plan for the student, including the dates such evaluation data was reviewed by each committee member;

5.  All communications of every kind and type sent to, received by, or sent by any teacher, aide, or administrator that relates and/or concerns the student, the student's education, or the student's behavior in any way;

6.  All documents and/or communications evidencing any directions, instructions, training and/or guidance given and/or provided to every teacher to implement any element of the Section 504 Accommodation Plan developed for the student;

7.  All educational records kept by every teacher reflecting the teacher's implementation of the classroom modifications and accommodations, if any, described in the student's Section 504 Accommodation Plan;

8.  The student's entire disciplinary record. This request specifically includes, but is not limited to, all educational records, incident reports, and summaries reflecting the nature, reason, explanation and date of every incident that resulted in any type or kind of disciplinary action or incident taken against the student regardless of the severity of the punishment;

9.  All other documents of every disciplinary incident involving any accusation of misbehavior or violation of Valor Education's Student Code of Conduct by the student including, but not limited to, all investigation reports, all teacher notes, notes of parent conferences, incident reports, counseling notes and reports, and notices sent to the parents concerning each reported disciplinary incident.

10. All counseling records, notes, and reports concerning the student;

11. All grades, grade reports, and norm-referenced testing results concerning the student;

12. All teacher records, journals, logs, tests, class assignments and assignment notebooks, modified tests, and any other document or thing evidencing, verifying, or relevant to implementation of any and all modifications stipulated in ████'s Section 504 Accommodation Plan;

13.     All documents created or received by any Valor Education employee concerning any harassment, threats, assaults, or other bullying incidents in which ▮▮▮▮ was the victim of such behavior at the hands of any other Valor Education student.

14.     All communications from ▮▮▮▮'s parent(s) concerning or related to any harassment, threat, assault, and/or bullying incident in which ▮▮▮▮ was the victim of such behavior at the hands of any other Valor Education student.

15.     All communications between school officials and any law enforcement agency concerning or related to ▮▮▮ Miller and any alleged assault of ▮▮▮ by any Valor Education employee.

16.     All email communications between by any employee of Valor Education to any other employee of Valor Education concerning or related to any alleged bullying incident, assault, or student harassment directed against ▮▮▮ by any other person.

17.     All documents and educational records that reflect documented specific actions, if any, undertaken by Valor Education to protect ▮▮▮ in his educational environment in response to the parent's complaints of harassment or bullying, whether or not the alleged misconduct was racially motivated or not.

18.     All written statements obtained by Valor Education and received from any teacher, student, or other witness concerning any threat, assault, or act of intimidation and/or bullying in which ▮▮▮ was the victim, redacted to exclude the names and other personally identifiable information concerning any other Valor Education student.

19.     All statements received from ▮▮▮ concerning any alleged incident of harassment, abuse, threat, or assault against him by any other person.

20.     A copy of any and all investigative reports concerning alleged hostile treatment of ▮▮▮ drafted by any Valor Education teacher and/or administrator, redacted to exclude the names and other personally identifiable information concerning any other Valor Education student.

 **EXHIBIT C** Christine Miller <millerca2011@gmail.com>

---

█████ **- Section 504**

3 messages

---

**Robert Miller** <robertmiller_tx@yahoo.com>                                    Wed, Jan 31, 2024 at 6:28 AM
To: "abennett@valoreducation.org" <abennett@valoreducation.org>
Cc: Michael Cowan <mcowan@valoreducation.org>, Christine Miller <millerca2011@gmail.com>

Mr. Bennett,
I am not sure if I'm addressing the correct person for these issues so please re-direct me to the correct people if
needed. Our concerns pertain to our son, █████ who is currently in 7th grade. When ███ was in 5th grade
we went through the process that assigned █████ to the Section 504 Student Services Plan. We were told that
accommodations would be provided for █████ to assist him in his education. We do not believe that the appropriate
accommodations are being provided to █████. This plan was put in place February 2022 and we were not familiar
with this 504 Plan and even now we're still learning about the full scope of this plan. However we have discovered that
Valor teachers and administrators should be familiar with the 504 Plan and are legally obligated to follow this plan. We
were told that we did not have to do anything and that we did not have to tell █████ about this 504 Plan designation
so that he would not feel negatively about himself. Ultimately █████ is struggling at school. It does not appear that
any significant and/or consistent accommodations are being provided.

We have the 504 Plan from February 2022 (see attachment) but we are not aware of any current accommodations for
this year or last school year. Many of O████'s poor academic performance relate to his struggles with maintaining
focus and organization. We've been trying to learn more about this 504 Plan and it would seem like Valor is not in
compliance.  Here is a list of some examples and areas of concern:

*█████ will have shortened classwork or homework - We do not see this happening or at least not on a consistent
basis.
*Extended time to complete classwork or homework as needed - We do not see this happening or at least not on a
consistent basis.
*Check in with █████ frequently to make sure he knows what is expected - We do not see this happening or at least
not on a consistent basis.
*Assessments may be read to █████ as needed at teacher discretion - Maybe not needed? But we do not see this
happening.
*STAAR testing accommodations - Not sure about this one but something that we would like to know more about.
*Provided notes - We do not see this happening or at least not on a consistent basis.
*O████'s teachers should be aware of 504 Plan at the beginning of the school year  - Is this happening? If so are the
teachers properly fulfilling they're roll?
*Is the 504 Plan properly written for █████? If so then we do not see evidence of that.
*Is there a lack of enforcement of the 504 Plan? To us it appears that way.
*Is there no 504 Plan? This seems possible.
*As parents we should not have to be requesting compliance of this 504 Plan.
*We hope that █████ is not made to feel uncomfortable because of being on this Plan and we hope that █████'s
teachers are discreet and courteous when providing accommodations.
*█████ or us parents should not have to remind teachers about this Plan and substitute teachers should be made
aware as needed.

We are now concerned that █████ may not have struggled so much in 6th grade (last school year) and with the first
semester of 7th grade if an appropriate 504 Plan was being followed. Most of the teacher feedback about
pertains to him not being prepared and not being focused adequately in class. Those issues are reasons for the 504
Plan so it would seem like the teachers are not aware of this Plan for █████ or that they lack the training. We would
like to resolve our concerns as soon as possible and we would like to set up a meeting with the appropriate Valor staff
to discuss all these concerns. We would like Valor to have an opportunity to resolve our concerns before we are
forced to make any formal complaints to the appropriate agencies.

Thank You for your assistance in this matter
Robert Miller (512)█████

**Valor South Austin**
S1 Report Card
7th grade, 2023-24



**EXHIBIT D**

VALOR
EDUCATION

| | | Q1 | Q2 | S1FE | S1 | Q3 | Q4 | S2FE | S2 |
|---|---|---|---|---|---|---|---|---|---|
| **Language Arts 7** | Ms. Way | **64 F** | **71 C-** | | **67 F** | **44 F** | **47 F** | **37 F** | **45 F** |
| Participation | | 84 B | 87 B+ | | 86 B | 85 B | 83 B | | 84 B |
| Homework & Reading Checks | | 49 F | 58 F | | 54 F | 31 F | 45 F | | 38 F |
| Assessments | | 73 C | 63 F | | 68 F | 39 F | 44 F | | 41 F |
| Writing Assignments | | 33 F | | | 33 F | 0 F | 0 F | | 0 F |
| **Pre-Algebra II** | Mrs. Schwolert | **77 C+** | **70 C-** | | **74 C** | **56 F** | **53 F** | **52 F** | **55 F** |
| Participation | | 88 B+ | 76 C | | 82 B- | 78 C+ | 77 C+ | | 78 C+ |
| Homework | | 86 B | 85 B | | 85 B | 43 F | 25 F | | 34 F |
| Quizzes | | 66 F | 54 F | | 60 F | 53 F | 58 F | | 56 F |
| Tests | | 71 C- | 67 F | | 69 F | 50 F | 50 F | | 50 F |
| **Life Science 7** | Mr. Martillotti | **70 C-** | **79 C+** | | **75 C** | **66 F** | **76 C** | **73 C** | **71 C-** |
| Participation | | 80 B- | 85 B | | 83 B | 79 C+ | 76 C | | 77 C+ |
| Homework/Classwork/Observations | | 58 F | 68 F | | 63 F | 43 F | 78 C+ | | 60 F |
| Quizzes | | 70 C- | 89 B+ | | 80 B- | 70 C- | 67 F | | 68 F |
| Tests | | 70 C- | 78 C+ | | 74 C | 72 C- | 79 C+ | | 76 C |
| **Texas History 7** | Ms. Heubaum | **72 C-** | **74 C** | | **73 C** | **70 C-** | **64 F** | **44 F** | **65 F** |
| Participation | | 85 B | 87 B+ | | 86 B | 85 B | 78 C+ | | 82 B- |
| Class Work | | 54 F | 78 C+ | | 66 F | 78 C+ | 63 F | | 70 C- |
| Tests/Projects | | 73 C | 56 F | | 65 F | 48 F | 51 F | | 49 F |
| **Physical Education 7** | Ms. Young | **95 A** | **92 A-** | | **94 A** | **91 A-** | **90 A-** | | **90 A-** |
| Participation | | 94 A | 88 B+ | | 91 A- | 88 B+ | 90 A- | | 89 B+ |
| Quizzes | | 102 A+ | 100 A+ | | 101 A+ | 100 A+ | 100 A+ | | 100 A+ |
| PE Uniform | | 90 A- | 96 A | | 93 A | 93 A | 75 C | | 84 B |
| **Latin IB (H)** | Ms. Corley | **45 F** | **64 F** | | **54 F** | **44 F** | **40 F** | **16 F** | **40 F** |
| Participation | | 82 B- | 88 B+ | | 85 B | 80 B- | 71 C- | | 76 C |
| Homework | | 11 F | 41 F | | 26 F | 15 F | 46 F | | 31 F |
| Tests | | 25 F | 58 F | | 42 F | 38 F | 11 F | | 24 F |
| Quizzes | | 61 F | 69 F | | 65 F | 42 F | 32 F | | 37 F |
| **Art 7** | Ms. Purcell | | | | **57 F** | | **69 F** | | **63 F** |
| Participation | | | | | | 62 F | 66 F | | 64 F |
| Craftsmanship | | | | | | 50 F | 72 C- | | 61 F |
| Assessments | | | | | | 64 F | | | 64 F |
| **Music 7** | Ms. Pioquinto | **69 F** | **81 B-** | | **75 C** | | | | |
| Participation | | 78 C+ | 80 B- | | 79 C+ | | | | |
| Quizzes | | 59 F | 82 B- | | 71 C- | | | | |
| **Average** | | 72 | 77 | | **75** | 62 | 64 | 48 | **63** |

GPA is based on the letter grade column above it and weighted by credits.

**Grade Key**
A+  98-100%
A   93-97%
A-  90-92%
B+  87-89%
B   83-86%
B-  80-82%
C+  77-79%
C   73-76%
C-  70-72%
F   0-69%

Please contact your student's teacher(s) if you would like to discuss student performance in greater detail.

Generated 6/28/24 11:14am CDT by JupiterEd.com

### <u>CERTIFICATE OF SERVICE</u>

This will certify that on this the 2nd day of October 2025, a true and correct copy of

the foregoing has been sent:

_____        certified mail, return receipt requested

_____        Telefax transmission

_____        Express courier

_____        hand delivery

XX            electronically served and submitted for e-filing with the Clerk of the U. S. District

Court for the Western District of Texas using the electronic filing system to:

Christopher H. Schultz
9011 Mountain Ridge Drive, Suite 210
Austin, Texas 78759
512-840-0022 OFFICE
512-538-5384 FAX
Email:  cschulz@slh-law.com

ATTORNEY FOR DEFENDANT

_Kelly Evans_

_____
KELLY EVANS